IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**HAUGHTLAND RESOURCES, LLC,**
**Interested Party Below, Petitioner**

**v.)  No. 25-ICA-84**  (Oil and Gas Conserv. Comm'n. No. 383-443)

**SWN PRODUCTION COMPANY, LLC,**
**Applicant Below, Respondent**

**FILED**

**November 12, 2025**

**released at 3:00 p.m.**
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Haughtland Resources, LLC ("Haughtland") appeals the February 13, 2025, order from the Oil and Gas Conservation Commission of West Virginia ("Commission") which combined 112 oil and gas tracts (totaling 490.80 acres) in Brooke County, one of which Haughtland possesses an ownership interest, into a newly formed Marcellus shale formation horizontal drilling unit (in a process called "unitization"). The Commission named the newly formed unit as the Gerald Gourley Southwest Unit ("Gourley Unit"), and it designated Respondent SWN Production Company, LLC ("SWN") as operator. Haughtland objected to its inclusion within the Gourley Unit arguing that SWN failed to make good faith offers for Haughtland's interest within the Gourley Unit. Haughtland also argues that the Commission improperly classified its interest. SWN filed a response brief supporting the Commission's order.[1] Haughtland filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' written and oral arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### FACTUAL AND PROCEDURAL BACKGROUND

SWN filed an application to unitize the oil and gas tracts within the proposed Gourley Unit on December 17, 2024, pursuant to West Virginia Code § 22C-9-7a (2022) (the "Application"). At the time of the Application, SWN procured the consent from royalty owners within the Gourley Unit equating to 84.45% of the net acreage, and 90.94% of the net acreage of the oil and gas operators. SWN asserted that it made good faith efforts to obtain consent from all locatable interest holders, and that establishing the Gourley Unit

---

[1] Haughtland is represented Kerri C. Strum, Esq., J. Anthony Edmond, Jr., Esq., and John R. Whipkey, Esq. SWN is represented by Robert M. Stonestreet, Esq. and Timothy M. Miller, Esq.

would further the goals of the West Virginia Oil and Gas Conservation Act found at Article 9, Chapter 22C of the West Virginia Code (the "Act"). SWN included in the Application an affidavit by Monty Mayfield, a landman for SWN, wherein he attested that SWN made good faith offers and efforts to obtain leases or consent to pool from the oil and gas interests within the proposed Gourley Unit. According to Mr. Mayfield, SWN made in-person visits, telephone calls, and letters in its efforts to gain voluntary agreements to pool or unitize.

On January 26, 2025, Haughtland filed objections to the Application. It argued that SWN violated West Virginia Code § 22C-9-7a(c)(2)(C) by failing to make good faith offers to participate or consent or agree to the proposed unitization or to negotiate in good faith with royalty owners in the target formation within the proposed unit who have not previously consented or agreed to the pooling or unitization. Haughtland noted that it was litigating a breach of contract lawsuit against SWN pending in the United States District Court for the Northern District of West Virginia (the "Federal Court Litigation") regarding an oil and gas tract outside of the proposed Gourley Unit but covered by a lease between Haughtland (as successor lessor) and SWN (as lessee-operator) dated September 20, 2001 (the "Haughtland Lease"), and that "any attempt at good-faith negotiations [concerning the Gourley Unit] cannot be conducted unless and until a resolution is met in that matter…." Haughtland also alleged that SWN made only one pre-Application offer for its Marcellus shale formation acreage within the proposed Gourley Unit. Further, Haughtland argued that its Marcellus shale formation oil and gas interest in the proposed Gourley Unit should be classified as "unleased" for purposes of the Application review procedure because the Haughtland Lease prohibited the drilling or capturing of natural gas in the Marcellus shale formation.[2]

SWN responded to Haughtland's objections and argued that the breach of contract lawsuit with Haughtland had no effect on the proposed Gourley Unit, and that contrary to Haughtland's assertions, it made good faith offers to acquire Haughtland's rights for the Marcellus shale formation gas within the Gourley Unit.

The Commission held a hearing on January 29, 2025, to review the Application and Heartland's objections. Both SWN and Haughtland appeared by counsel and presented witness testimony. Relevant to this appeal is the testimony of Mr. Mayfield, SWN's landman. He testified that he assisted with the creation of the Gourley Unit plat, and he oversaw and approved SWN's application to the Commission for the Gourley Unit. Without objection, Mr. Mayfield testified that he believed SWN made good faith efforts to obtain leases or consent from all oil and gas interest owners within the Gourley Unit. Mr.

---

[2] Haughtland further alleged that the proposed Gourley Unit would result in orphaned acreage, a dilution of its hydrocarbon interests within the proposed unit, and duplicate unitization acreage for the same formation. Haughtland does not pursue these objections on appeal.

Mayfield further testified that SWN made four offers to Haughtland for the Marcellus shale formation oil and gas within the Gourley Unit.[3]

Mr. Mayfield was cross examined not by Haughtland's legal counsel, but rather by Brian Corwin, a non-lawyer and owner of Haughtland.[4] The cross examination failed to challenge Mr. Mayfield's opinion about the good faith offers and negotiations nor did the cross-examination further inquire about the details of pre-Application offers by SWN regarding the proposed Gourley Unit. No inquiry was made as to possible counter offers, requests for additional terms by either party, or the economic basis of the offers made. The cross examination of Mr. Mayfield mainly concerned the Haughtland Lease in dispute in the Federal Court Litigation and the dates on which SWN made offers to Haughtland.

During Mr. Mayfield's testimony, Mr. Corwin and Commission members discussed whether Haughtland had a lease for the Marcellus shale formation oil and gas within the Gourley Unit. Mr. Corwin argued about whether the Haughtland Lease applied to the Marcellus shale formation and noted that the Lease was the subject of the Federal Court Litigation. Mr. Corwin requested a continuance of the Commission's proceeding until a resolution of Federal Court Litigation was reached. The Commission denied the request for a continuance and declared that the Commission would not determine the status of the Haughtland Lease.[5]

After the close of testimony, the Commission voted to grant the Application. On February 13, 2025, the Commission entered a final order. Among other things, the Commission determined that SWN satisfied the good faith requirement of West Virginia Code § 22C-9-7a(c)(2)(C). The Commission found that SWN made three pre-Application

---

[3] According to Mr. Mayfield, SWN made three offers to purchase Haughtland's entire oil and gas lease, which included the Gourley Unit. These offers were made to Haughtland on February 15, 2024, December 5, 2024, and January 5, 2025. Mr. Mayfield testified that an offer, solely for Haughtland's Marcellus shale formation oil and gas within the Gourley Unit, was made on October 2, 2024.

[4] Prior to the commencement of testimony, counsel for Haughtland stated that Mr. Corwin would testify as a witness. However, Mr. Corwin was never sworn as a witness in the proceedings. Upon Haughtland's request, the Commission permitted Mr. Corwin to cross-examine Mr. Mayfield.

[5] In a § 22C-9-7a unitization proceeding, the classification of a non-consenting mineral owner's tract as "leased" or "unleased" for oil and gas extraction determines the consideration to be paid to the non-consenting mineral owner. If a tract is unleased, an owner will receive a larger one-time upfront per acreage bonus payment and a higher royalty percentage rate. Moreover, a non-consenting owner of "unleased" oil and gas rights in a unit is afforded various elections not available to a "leased" tract owner. *Compare* W. Va. Code § 22C-9-7a(f)(6) *with* -7a(f)(7).

3

offers to either obtain Haughtland's consent to pool and unitize or to modify the Haughtland Lease to allow for pooling and unitization. It noted that SWN made a specific offer to modify the Haughtland Lease for the acreage within the Gourley Unit on October 2, 2024, that SWN made a fourth offer after the application was filed, and that Haughtland did not question SWN's witnesses regarding the terms of SWN's offers. The Commission also found that Haughtland is a successor lessor of an oil and gas lease dated September 20, 2001, which does not grant it the right to pool and unitize the Marcellus shale formation within the Gourley Unit. It also found that the Federal Court Litigation did not prevent it from entering an order unitizing the tracts within the Gourley Unit. Haughtland appeals the February 13, 2025, order.

**STANDARD OF REVIEW**

Judicial review of orders from the Commission are governed by the Administrative Procedures Act. W. Va. Code § 22C-9-11(a) (1988). As a result, the standard of review found in West Virginia Code § 29A-5-4(g) (2021) govern this appeal:

> (g) The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedures;
>
> (4) Affected by other error of law;
>
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

**DISCUSSION**

On appeal, Haughtland raises two assignments of error.[6] In its first assignment of error, Haughtland argues that the Commission committed error when it granted the

---

[6] The table of contents for Haughtland's opening brief lists two assignments of error, while later in the brief, Haughtland lists three assignments. However, in the argument

4

Application without considering whether SWN negotiated in good faith with interest owners prior to filing the Application or requiring SWN to demonstrate that it made good faith offers.[7] Haughtland's second assignment of error alleges that the Commission committed error when it determined legal issues (concerning the Haughtland Lease) that the Commission repeatedly stated it could not and would not determine.

Before addressing these assignments, we briefly discuss the relatively new regulatory framework undergirding the Application and the Commission's order. The Act was established to encourage and promote the development, production, utilization, and conservation of oil and gas resources; to prohibit the waste of oil and gas resources; to encourage the maximum recovery of oil and gas; to safeguard and protect the correlative rights of operators and royalty owners in a pool of oil or gas; and to safeguard and protect the property rights and interests of surface owners. W. Va. Code § 22C-9-1(a) (2022). Technological advancements in oil and gas exploration and horizontal drilling have enabled oil and gas extraction from subterranean formations, such as the Marcellus shale formation. *See* James E. McDaniel, *Statutory Pooling and Unitization in West Virginia: The Case for Protecting Private Landowners*, 118 W. Va. L. Rev. 439 (2015) (explaining horizontal drilling, voluntary and compulsory pooling, and advocating for West Virginia to adopt a compulsory unitization statute). Targeting these formations often requires drilling through and extracting from separately owned oil and gas tracts. *See id*. at 455-456. Traditional oil and gas law permitted interest owners the option of outright rejecting exploration or holding out for higher sums from would-be oil and gas operators. *See id*. at 465. Moreover, West Virginia courts refused to impute or infer a right to pool or unitize in leases that did not expressly contemplate pooling or unitizing the leased interest with other interests. *See Ascent Resources – Marcellus, LLC v. Huffman*, 244 W. Va. 119, 851 S.E.2d 782 (2020). As a result, efficient oil and gas extraction though horizontal drilling could be delayed or prevented by a minority of interest owners.

Ultimately, the West Virginia Legislature enacted West Virginia Code § 22C-9-7a to establish a process for compulsory unitization (or forced pooling)[8] of oil and gas interests

_____

section of its brief, Haughtland again designates two assignments of error. We will address the two assignments of error discussed in Haughtland's argument.

[7] Haughtland alleges SWN did not negotiate in good faith with other non-consenting interest owners within the Gourley Unit. However, we will only address assignments of error related to SWN's negotiations with Haughtland. No other party affected by the Commission's February 13, 2025, unitization order appeared to object at the hearing, contested SWN's application or evidence, or appealed the Commission's order.

[8] The SCAWV previously recognized the difference between the related terms *unitization* and *pooling*. *See Ascent Resources*, 244 W. Va. at 122 n.2, 851 S.E.2d at 785 n.2. However, the Legislature subsequently defined "unitization" for purposes of this

5

for horizontal drilling within target formations. Unitization combines several oil and gas tracts located within a target formation, and each tract is allocated production based on its net acreage. W. Va. Code § 22C-9-7a(b)(8). Unitization can be voluntary if all interest owners agree to horizontal drilling, or unitization can be compulsory,[9] pursuant to West Virginia Code § 22C-9-7a, if a minority of interest owners object to their inclusion in a unit.

The Commission is charged with accepting applications for unitization and determining whether an applicant meets the statutory requirements to force pool multiple oil and gas tracts. If an applicant is successful, the Commission issues an order identifying the newly formed unit, those tracts within the unit, the amount of proceeds each nonconsenting oil and gas interest will receive, and it appoints an operator of the unit.

Before an application will be accepted, an applicant for unitization must obtain consent from a sizeable portion of owners, lessees, and operators within the net acreage of the proposed unit. Relevant to this case, an applicant must also present evidence that it negotiated in good faith and made good faith monetary offers for consent to extract oil and gas to all interest owners in the proposed unit. W. Va. Code §§ 22C-9-7a(c)(2)(C)(i) and (ii). If an applicant does not meet these requirements, the application "shall be dismissed without prejudice." W. Va. Code § 22C-9-7a(c)(4).

If an applicant meets the requirements outlined in West Virginia Code § 22C-9-7a(d), the Commission shall hold a hearing on the application. Prior to the hearing, however, the Commission is required to appoint a third-party lawyer or accountant to review and issue a report regarding an applicant's lease terms, including royalty payments, with the consenting interest owners within the unit on a per net mineral acre basis. W. Va. Code §§ 22C-9-7a(g)(4)(A), (B), and (C). The Commission then applies a statutory formula for compensating leased and unleased interest owners, which is outlined in West Virginia Code §§ 22C-9-7a(f)(6) and (7) to determine the net acreage bonus and royalty payments to nonconsenting interest owners.

*A. Good Faith*

In support of its first assignment of error, Haughtland argues that the Commission's finding of good faith was arbitrary and without any support in the record, that the terms of

appeal, and we follow the statutory term in this decision. *See* W. Va. Code § 22C-9-7a(b)(8).

[9] Compulsory unitization is a process whereby a private oil and gas operator makes an application to unitize multiple oil and gas tracts, and a governmental authority issues an order designating a newly formed unit for horizontal drilling and requires nonconsenting owners, lessees, and existing oil and gas operators to permit the exploration and extraction of oil and gas in their tracts. McDaniel, *supra*, at 455-459.

SWN's offers demonstrate that it lacked good faith, and that the Commission applied the wrong standard when it determined SWN made good faith offers. We disagree.

West Virginia Code §§ 22C-9-7a(c)(2)(C)(i) and (ii) require that, prior to filing an application for unitization, SWN negotiate with all interest owners in good faith and make good faith monetary offers to consent or agree to pool the Marcellus shale formation oil and gas within the proposed Gourley Unit.

The Supreme Court of Appeals of West Virginia ("SCAWV") has acknowledged the difficulty of defining good faith when applying the standard to different situations. In *Nicole L. v. Steven W.,* the SCAWV labeled good faith an "amorphous" term and referenced Black's Law Dictionary, 6th Edition definition: "Good faith is an intangible and abstract quality with no technical meaning or statutory definition, and it encompasses, among other things, an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage." 241 W. Va. 466, 476, 825 S.E.2d 794, 804 (2019).

The Commission found that prior to filing its application for unitization, SWN made three good faith offers to either obtain Haughtland's consent to pool and unitize or to modify the Haughtland Lease to allow for pooling and unitization. The Commission's order notes Mr. Mayfield's testimony wherein he described the three pre-Application offers made to Haughtland, including an October 2, 2024, offer specifically tailored for only the acreage within the Gourley Unit. Haughtland argues that the two other pre-Application offers, namely the offers made on February 15, 2024, and December 5, 2024, do not count as good faith offers because they also included acreage outside the Gourley Unit, and that only one offer is not negotiating in good faith. However, the Commission determined that all of SWN's offers to Haughtland were for the purpose of unitizing the Gourley tracts, and we do not believe the Commission abused its discretion or acted arbitrarily when it found that SWN's three pre-Application offers were good faith efforts to gain Haughtland's consent to pool or modify the Haughtland Lease.

Haughtland emphasizes that SWN's pre-Application offer of $545.31 per acre as evidence it was not acting in good faith. Haughtland notes that the Commission determined that non-consenting lessors were entitled to $998.78 per acre, which is nearly double SWN's offer. According to Haughtland, SWN's per-acre offer was "a low-ball, bad faith offer" that does not meet the good faith requirement in West Virginia Code § 22C-9-7a(c)(2)(C).

While SWN's evidentiary presentation at the hearing regarding good faith was minimal, Mr. Mayfield, who shepherded SWN's application process, testified (without objection or effective cross examination) that the offers made to Haughtland were in good faith. Haughtland offered no evidence regarding SWN's process for establishing the per-acre offer, the actual per-acre offers, or even attempt to question Mr. Mayfield regarding why he believed SWN's offers were made in good faith. Haughtland's questioning of Mr. Mayfield was essentially limited to describing the offers made. Given that the only evidence presented to the Commission supported SWN's assertions that it acted in good

faith, we do not find that the Commission committed clear error or an abuse of discretion in its good faith finding.

Haughtland next argues that the Commission's order is defective because it provided no articulated standard for a good faith determination of the offers made by SWN. Haughtland cites unitization regulations in Texas, Oklahoma, and Colorado[10] and asserts that the Commission should have required that SWN make pre-Application offers to Haughtland based on the prevailing lease terms with other interest owners in the Gourley Unit. Looking to these other states, Haughtland asks this Court to create a test of good faith that requires applicants for compulsory unitization to base pre-Application offers on lease terms provided to other tracts within a proposed unit. However, these states have enacted specific statutory or regulatory requirements in this regard, unlike West Virginia. The law requires a good faith offer be made to interest owners within a proposed unit. No legislative rule has been adopted to provide further guidance. In summary, West Virginia Code § 22C-9-7a does not require offers to unitize to be based on other leases, or that an applicant disclose its lease terms with other interest owners within a proposed unit. In fact, West Virginia Code § 22C-9-7a(g)(4)(E) permits an applicant to request that its lease terms be treated as confidential. Accordingly, we find that the Commission did not commit error when it determined that SWN made sufficient good faith pre-Application offers to Haughtland based on the evidence presented at the hearing.

*B. Classification of Haughtland's Interest in Gourley Unit as* Leased *or* Unleased

Finally, Haughtland argues that the Commission committed error by finding that Haughtland is a lessor within the unitized tract, despite the Commission's declaration during the hearing that it did not have authority to determine the status of the Haughtland Lease. The hearing transcript reveals a lengthy exchange between Haughtland and the Commission members regarding the Federal Court Litigation, and the Haughtland Lease at issue in that case. During this exchange, members of the Commission informed Haughtland that the Commission does not have jurisdiction to interpret the Haughtland Lease that was the subject of dispute in the Federal Court Litigation, and that the Commission "can't decide whether you are leased or unleased" for purposes of the Gourley Unit.

The Commission's order states that Haughtland is a lessee. However, the order does not direct that Haughtland be compensated as a non-consenting lessee for purpose of the unitization of the Gourley Unit. The order only unitizes the tracts within Gourley Unit, assigns a SWN as the operator of the Unit, and directs that interest owners be compensated according to whether their interests are leased or unleased. The parties to this appeal do not cite to any authority within the Act that authorizes or requires the Commission to make

---

[10] The Texas, Oklahoma, and Colorado statutes and regulations are like West Virginia, in that they provide an avenue for forced unitization. However, as Haughtland acknowledges, these states have different legal requirements for offers to non-consenting interest owners within a proposed unit.

legal determinations regarding the status of a lease in a compulsory unitization proceeding. As the Commission members noted during the hearing, a dispute regarding whether an interest is leased or unleased is an open matter not determined by the Commission in its order.

In summary, the Commission's order loosely declares that Haughtland is a lessee. However, the Commission did not purport to characterize Haughtland's interest in the Gourley Unit as leased or unleased for purposes of West Virginia Code § 22C-9-7a. Therefore, any purported finding in the Commission's order on this issue is without effect and is considered harmless error.[11]

## CONCLUSION

For the reasons set forth in this decision, we affirm the Commission's order dated February 13, 2025.

Affirmed.

**ISSUED:** November 12, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[11] SWN's counsel at oral argument conceded that SWN would not assert that the objectional language in the order precludes a future determination that Haughtland could be considered "unleased" for purposes of the Gourley Unit depending upon the outcome of the Federal Court Litigation.